NOT DESIGNATED FOR PUBLICATION

Nos. 121,442
122,223
122,224

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
RICHARD MARSHALL HUMPHRIES,
*Appellant*,

and

NICOLE LYNN HUMPHRIES
n/k/a Nicole Lynn Jeffries,
*Appellee.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed November 20, 2020. Affirmed in part, vacated in part, dismissed in part, and remanded with directions.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Overland Park, for appellant.

*Myndee M. Lee*, of Lee Law LLC, of Overland Park, for appellee.

Before POWELL, P.J., GREEN and STANDRIDGE, JJ.

POWELL, J.: Richard Marshall Humphries and Nicole Lynn Humphries n/k/a Jeffries were divorced in 2007. The parties have a considerable history of litigation before the district court, and these consolidated appeals principally arise out of an order issued by the district court after a hearing at which Richard was absent. At the hearing, the district court (1) found Richard in indirect contempt of court; (2) granted the guardian ad litem's (GAL) last minute request for fees; and (3) ordered Richard to pay his

1

proportionate share of their daughter's unreimbursed medical expenses. After the briefs were filed, Richard filed a motion for appellate attorney fees.

After review of the record, we agree with Richard that the district court erred by finding him in contempt outside of his presence. We also find the district court improperly ordered Richard to pay the GAL's fees because he was given insufficient notice. However, we find no error in the district court's orders that Richard pay his proportionate share of his daughter's unreimbursed medical expenses given that such expenses are required by the child support guidelines and there had been an order in place since March 17, 2016, requiring the same to be paid. Finally, we dismiss Richard's request for appellate attorney fees as both untimely and unwarranted.

FACTUAL AND PROCEDURAL BACKGROUND

This case has a long and extensive history. Because the parties are well acquainted with that history, we briefly summarize only the relevant facts.

Richard and Nicole were married in 2000, and one child was born of their marriage: A.H., born in 2001. In 2005, Richard petitioned for divorce from Nicole in the Leavenworth County District Court; following a trial, the divorce was granted on February 14, 2007. Nicole was originally designated as A.H.'s primary residential parent, although that was later changed to shared residential custody in 2008. Due to the parties leaving Leavenworth County, on May 28, 2014, the district court changed venue to Wyandotte County because it found significant contacts no longer existed in Leavenworth County. In June 2014, Richard was granted custody of A.H.

On March 17, 2016, the Wyandotte County District Court ordered Richard and Nicole to pay all uncovered medical expenses in the proportionate amount provided in Line D2 of the child support worksheet, with Richard responsible for 82% of the

2

expenses and Nicole responsible for 18%. The district court also ordered Richard to provide medical insurance coverage for A.H.

In January 2017, the district court appointed a GAL; in a subsequent order, it adopted the GAL's recommendations, including having A.H. continue to live with Richard and requiring Richard and Nicole to enroll in various programs and services.

A year later the GAL sought to have Richard held in indirect contempt. The GAL alleged Richard had failed to obey the district court's order to enroll in a cooperative parenting and divorce course. The motion also alleged that, by not complying, Richard delayed court proceedings and caused increased legal expenses for the GAL. The district court issued an order to appear, directing Richard to appear on March 13, 2018, to show cause why he should not be held in contempt.

At the hearing on March 13, the contempt motion was discussed but no evidence was taken. Ultimately, the matter was continued, and no new hearing date was scheduled. Instead, the district court ordered Richard to subpoena A.H.'s psychiatrist for an evidentiary hearing to be held on May 9. At that hearing, the parties agreed for A.H. to enter an outpatient treatment program, and the district court ordered that A.H. reside with her paternal aunt during this treatment. A July 11 hearing date was set to review progress concerning A.H.'s treatment, and the district court reiterated that all orders which did not contradict the May 9 order remained in effect.

At the July 11, 2018 hearing, the district court learned Richard had not complied with its order sending A.H. to treatment. When the district court asked Richard's attorney why Richard had not complied with the order, the attorney responded it was her understanding the treatment facility was an out-of-network provider on Richard's insurance and the out-of-pocket cost for was going to be $6,000, which she said "was just cost prohibitive." The district court informed Richard he was on notice that it would hear

3

the GAL's motion for contempt against him on July 31, 2018. The district court continued the July 31 hearing to October 9, 2018, because it needed some transcripts.

In response to what appeared to be an emergency request by the GAL, on August 10, 2018, the district court issued an ex parte order changing custody of A.H. to Nicole. The district court reaffirmed this order after a hearing on August 20.

The October 9, 2018 hearing was rescheduled for October 30, 2018. At the October 30 hearing, the district court adopted the parties' agreed journal entry concerning child support which, among other things, ordered Nicole to provide health insurance for A.H. instead of Richard. The agreed order was silent with respect to unreimbursed medical expenses. The October 30 contempt hearing was rescheduled for January 30, 2019.

The GAL filed a motion for payment of GAL fees on January 29, 2019, to be determined at the contempt hearing set for the next day.

The district court held the contempt hearing on January 30. Richard did not appear. Richard apparently emailed the GAL, asking her to request a continuance from the district court, but he did not contact the district court himself. At the hearing, the district court found Richard had been given proper notice and proceeded in his absence. After hearing statements from Nicole's counsel and the GAL, the district court found Richard in contempt and ordered Richard to pay all GAL fees and all court costs incurred in the case. The district court also granted Nicole's request that Richard pay his proportionate share of A.H.'s unreimbursed medical expenses, making the order retroactive to October 1, 2018. Because of wrangling over the language of the journal entry, the order was not filed until May 3, 2019.

4

On July 7, 2019, the district court trustee sought judgment against Richard for his proportionate share of unreimbursed medical expenses not yet paid to Nicole. Richard opposed the motion, asking the district court to set aside the January 30, 2019 judgment because it violated his due process rights. The district court refused and entered judgment against Richard for his unpaid share of A.H.'s unreimbursed medical expenses. Another unreimbursed medical expenses judgment against Richard was sought on October 28, 2019, which Richard again opposed for the same reasons as before. The district court overruled Richard's objection and granted the judgment.

Richard now appeals the district court's (1) finding of contempt against him; (2) order that he pay all GAL fees; and (3) two unreimbursed medical expense orders. He also asks us to award him his attorney fees on appeal.

I.  DID THE DISTRICT COURT ERR IN HOLDING RICHARD IN CONTEMPT?

Richard first argues the district court erred when it held the contempt hearing without him present and without giving him proper notice. Richard also alleges the district court improperly expanded the scope of the contempt hearing outside the allegations in the GAL's contempt motion.

Nicole concedes the district court should not have held the contempt hearing in Richard's absence and asks us to vacate the district court's contempt order and remand the matter for proper notice and hearing. Richard replies that a remand is improper because A.H. is over 18 years old and the district court no longer has jurisdiction over child support issues.

*Standard of Review*

Whether a district court followed the procedures in the contempt statutes is subject to our unlimited review. *In re Paternity of S.M.J. v. Ogle*, 310 Kan. 211, 212, 444 P.3d 997 (2019). We apply a dual standard of review to a district court's contempt finding. The district court's determination that the alleged conduct constituted contempt is reviewed de novo, while the imposition of sanctions is reviewed for abuse of discretion. *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154-55, 323 P.3d 184 (2014). Discretion is abused when a judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party alleging an abuse of discretion bears the burden to establish such abuse existed. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*Analysis*

Contempt of court is divided into two classes: direct contempt and indirect contempt. K.S.A. 20-1201. Direct contempt occurs when the underlying contemptuous act is committed in the presence of the judge, either in chambers or in open court. All other contempts are indirect. K.S.A. 20-1202. An indirect contempt proceeding entitles the accused to greater constitutional procedural safeguards because the judge lacks first-hand personal knowledge of the contemptuous conduct. The court's reliance on the knowledge of others cannot justify a contempt conviction unless the accused is provided a trial and an opportunity to defend against the charges. A person charged with indirect contempt must "'be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.'" *In re McDaniel*, 54 Kan. App. 2d 197, 209-10, 399 P.3d 222 (2017).

Although the contempt statutes do not distinguish between criminal and civil contempt, "[c]ivil contempt is a remedial or corrective action meant to coerce a party into acting." *Electronic Realty Associates, Inc. v. Gomez*, 18 Kan. App. 2d 122, 125, 848 P.2d 458 (1993). "Criminal contempt can occur in either a civil or criminal proceeding [and] is intended to punish conduct that is 'in disrespect of a court or its processes, or which obstructs the administration of justice.'" 18 Kan. App. 2d at 125. "Criminal contempt punishes a party for a past violation of an order with a fixed fine or jail sentence as a punitive sanction." *In re McDaniel,* 54 Kan. App. 2d at 211. Upon a finding of civil contempt, a court may impose a jail sentence or a periodic fine until the party complies. "The party in civil contempt must be permitted to 'unlock the door of the jail' by doing what the party previously failed to do." 54 Kan. App. 2d at 211.

Here, the district court held a contempt hearing based on the GAL's motion for an order of indirect contempt. Therefore, the district court was required to follow the statutory procedures for indirect contempt.

A district court may order a person alleged to be guilty of indirect contempt to appear and show cause why that person should not be held in contempt if there is a motion requesting the court to do so accompanied by an affidavit setting forth the specific facts constituting the alleged violation. K.S.A. 2019 Supp. 20-1204a(a). The order must be served on the party allegedly in contempt and state the time and place where the person is to appear, and the court must hear the matter at the time specified in the order. K.S.A. 2019 Supp. 20-1204a(b). If the person does not appear after proper service, the court may issue a bench warrant for that person. Once that person is brought before the court, the court may proceed with the indirect contempt hearing. K.S.A. 2019 Supp. 20-1204a(c).

The Kansas Supreme Court has addressed the proper procedures to take in the absence of the party allegedly in contempt at an indirect contempt proceeding. In *In re*

*Paternity of S.M.J.*, the district court held a party in indirect contempt at a hearing where neither that party nor his attorney appeared. Our Supreme Court noted that the statutes outlining the procedure for holding a party in indirect contempt "'must be strictly construed against the movant'" and held the subsections of K.S.A. 2019 Supp. 20-1204a are naturally read together to allow a judge "to proceed with a contempt hearing once the person accused is present, but not before." 310 Kan. at 213-14. The court vacated the contempt order and remanded the case for the district court to reconsider the contempt motion. 310 Kan. at 215.

*In re Paternity of S.M.J.* controls here. As Nicole concedes, Richard's presence was required before the contempt hearing could proceed, and the district court erred by proceeding in Richard's absence. Instead, the district court should have taken measures to ensure Richard's presence at the contempt hearing. Thus, we must vacate the district court's contempt order.

Given that the district court acted in error, Nicole asks us to remand the case to allow the district court to redo the contempt proceeding with Richard present. Richard objects to a remand for a new contempt hearing on the grounds that the district court no longer has jurisdiction to hold him in contempt because A.H. is over 18, meaning the district court no longer has jurisdiction over child support issues.

Richard is correct that child support typically ends when the child reaches 18. See K.S.A. 2019 Supp. 23-3001(b). But, "[t]here is nothing in our divorce code or in our contempt statutes indicating that the contempt power of a district court to enforce its support orders terminates upon the child's reaching majority." *Crumpacker v. Crumpacker*, 239 Kan. 183, 185, 718 P.2d 295 (1986). Although A.H. may be over 18, the district court must still address the allegations that Richard failed to obey its orders, and, if so, it then must address the question of what sanctions are appropriate. Parties cannot escape their duty to obey court orders by running out the clock on their child's

8

childhood. The district court still has contempt power over Richard. We therefore remand the case to the district court for a rehearing on the contempt allegations with Richard present.

Because the contempt order is vacated, we need not decide the propriety of the district court's sanctions. But we advise the district court to consider whether it wishes to coerce compliance with its orders or punish for noncompliance. If the district court seeks to coerce compliance with its orders, it must "give the contemnor 'the keys to the jail.'" *In re J.T.R.*, 47 Kan. App. 2d 91, 92, 271 P.3d 1262 (2012).

Finally, Richard briefly argues that if this case is remanded, we should reassign it to another district judge because the district judge in this case failed to respect his statutory and due process rights. However, Richard never raised this issue below by seeking the district judge's removal or recusal from the case. Thus, we deem the issue abandoned. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issues not raised below cannot be raised for first time on appeal). If Richard believes the district judge cannot be unbiased, he should file the appropriate motion on remand.

II.     DID THE DISTRICT COURT ERR IN ORDERING RICHARD TO PAY HIS PROPORTIONATE SHARE OF A.H.'S UNREIMBURSED MEDICAL EXPENSES?

Richard next argues the district court erred when, at the contempt hearing, it also ordered him to pay his proportionate share of A.H.'s unreimbursed medical expenses effective October 1, 2018. Richard argues the district court's order violated his due process rights by wrongly and retroactively modifying the October 30, 2018 agreed child support order because Nicole never filed a motion to modify this child support order and the district court held the hearing without him being present. Because he claims this order

is improper, Richard also argues the district court's two judgments against him requested by the district court trustee for unreimbursed medical expenses are also improper.

Nicole offers two reasons why the district court's action was appropriate. First, Nicole argues the district court did not modify the October 30, 2018 agreed child support order because an earlier March 17, 2016 order had already directed Richard to pay his proportionate share of unreimbursed medical expenses, meaning the district court's order merely recognized an already existing court order. Second, Nicole contends that as the district court is required to follow the child support guidelines when determining child support, and the guidelines direct the court to provide for all necessary medical expenses not covered by insurance, its order requiring Richard to pay his share of A.H.'s unreimbursed medical expenses was an appropriate nunc pro tunc order.

Richard responds to Nicole's argument by asserting the district court cannot disguise a modification of its October 2018 child support order as a nunc pro tunc order correcting an oversight. Richard also asserts a statute or rule directing the district court to provide for unreimbursed medical expenses does not grant the district court the authority to use a nunc pro tunc order to correct its omission because doing so constitutes an inappropriate retroactive increase in child support.

*Standard of Review*

The parties disagree as to our standard of review over this question. Richard claims the proper standard of review is de novo as to whether the district court had the authority to issue the unreimbursed medical expenses order. Nicole argues the proper standard of review is whether the district court abused its discretion in modifying its journal entry.

10

Generally speaking, we review a district court's child support order for an abuse of discretion. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015). But where an interpretation of the child support guidelines, or any relevant statute is required, these involve questions of law allowing for our unlimited review. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012). In the case of an ambiguous district court order, remand is required. 295 Kan. at 977. Because our evaluation of the district court's order in this instance does not involve the wisdom of its decision but its authority to do so, our review is de novo.

Richard's assertion the district court violated his right to due process by failing to give him proper notice and by holding the hearing in his absence is also a legal question subject to de novo review. *Kerry G. v. Stacy C.*, 55 Kan. App. 2d 246, 251, 411 P.3d 1227 (2018).

*Analysis*

K.S.A. 2019 Supp. 23-3002(a) directs the district courts to follow the Kansas Child Support Guidelines when determining the amount parties should pay for child support. Under the guidelines, provision must be made for all necessary medical expenses not covered by insurance. Kansas Child Support Guidelines § IV.D.4.b. (2020 Kan. S. Ct. R. 111). This typically means that "medical expenses not covered by insurance are generally divided based on each parent's percentage of the parties' total income. Guidelines, § IV.D.4.b." *In re Marriage of Lask*, No. 122,147, 2020 WL 5849366, at *6 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* October 30, 2020.

On March 17, 2016, the district court issued a child support order which included an order that each party pay his and her proportionate share of A.H.'s unreimbursed medical expenses in accordance with the Line D.2 of the child support worksheet. Subsequent to this order, the district court issued a number of new child support orders,

11

some of which are highlighted in Richard's motion objecting to the district court trustee's request that he pay his share of unreimbursed medical expenses, but all were silent as to unreimbursed medical expenses. The parties' agreed child support order from the October 30, 2018 order also made no mention of A.H.'s unreimbursed medical expenses. The order's only discussion of medical expenses is the district court's order for Nicole to provide health insurance for A.H. and relieving Richard of his responsibility to provide A.H. with health insurance.

Richard correctly argues that a child support order may only operate prospectively, not retroactively, and that any "child support order sets the 'limit' of liability for the person ordered to pay support until that decree is modified." *In re Marriage of Blagg*, 13 Kan. App. 2d 530, 533, 775 P.2d 190 (1989); *In re Marriage of Ames*, No. 93,696, 2006 WL 90103, at *4 (Kan. App. 2006) (unpublished opinion). In order for the district court to modify the agreed child support order from October 2018, Richard reasons, Nicole needed to file a written motion asking for a modification. See K.S.A. 2019 Supp. 23-3005(b). We agree. See K.S.A. 2019 Supp. 60-206(c) (statutory due process requires written motion and notice of hearing to be served upon opposing party at least seven days before hearing); *In re Marriage of Fuller*, 52 Kan. App. 2d 721, 726-27, 371 P.3d 964 (2016) (oral request for child support modification at hearing inadequate notice).

But the problem with Richard's arguments is they are all based on the premise that Nicole's oral request at the contempt hearing for unreimbursed medical expenses modified the agreed child support order from October 2018. It did not. According to the record, Richard had been under a standing order to pay his share of such unreimbursed medical expenses since March 17, 2016.

Richard also relies on *Blagg* and *Ames* for the proposition that the child support guidelines' requirement that a party pay unreimbursed medical expenses is not self-executing and must be realized by a court order. See *Blagg*, 13 Kan. App. 2d at 533;

*Ames*, 2006 WL 90103, at *4. Again, we agree. For Richard to be liable for unreimbursed medical expenses, the district court had to order it. Again, according to the record, it did so on March 17, 2016.

But the converse is also true. Because Richard had been under an order to pay his proportionate share of A.H.'s unreimbursed medical expenses beginning March 17, 2016, for Richard to be relieved of this duty, an explicit order from the district court was required. See *In re Marriage of Schoby*, 269 Kan. 114, 117, 4 P.3d 604 (2000) (child support is a right of the child and can be modified or terminated only by court order). Prior to the district court's order concerning unreimbursed medical expenses contained in its October 2018 contempt order, all other child support orders after March 17, 2016, save one, had been silent on the issue of unreimbursed medical expenses; thus, these subsequent child support orders never abrogated Richard's requirement to pay his proportional share of A.H.'s unreimbursed medical expenses. The only child support order issued after March 17, 2016, but prior to October 2018, that referenced unreimbursed medical expenses concerned a stipulation by the parties that Richard pay unreimbursed medical expenses consistent with the March 2016 order. As a result, Richard has been under a continuous duty to pay his proportional share of A.H.'s unreimbursed medical expenses since March 17, 2016.

Accordingly, we conclude that any procedural or due process errors committed by the district court in granting Nicole's oral request for unreimbursed medical expenses at the contempt hearing were harmless. The unreimbursed medical expenses order issued as part of the contempt order merely reaffirmed the district court's earlier unreimbursed medical expenses order from March 17, 2016. For the same reason, the district court did not err in subsequently granting the district court trustee's two requests for judgment against Richard for unreimbursed medical expenses.

13

III.   DID THE DISTRICT COURT ERR BY ASSESSING GAL FEES ONE DAY AFTER THE
       GAL FILED A MOTION TO ASSESS FEES?

Richard next argues the district court violated his due process rights when it granted the GAL fees without waiting seven days before holding a hearing, contrary to K.S.A. 2019 Supp. 60-206(c). Nicole does not respond to this argument in her brief.

*Standard of Review*

Whether someone was afforded due process is a legal question subject to de novo review. *Kerry G*, 55 Kan. App. 2d at 250-51.

*Analysis*

"'The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" 55 Kan. App. 2d at 251. "'Due process requires that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."' [Citations omitted.]" *In re Marriage of Fuller*, 52 Kan. App. 2d at 725-26. A person can have "a statutory right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner that mirrors [the] constitutional right to due process." *Kerry G.*, 55 Kan. App. 2d at 251.

K.S.A. 2019 Supp. 60-206(c) requires a party, when filing a motion, to serve the other party with the written motion and notice of hearing at least seven days before the time for the hearing with three exceptions:  when a motion may be heard ex parte; when the statute sets a different time; or when a court order sets a different time. Additionally, a party may file a memorandum in opposition to the motion no later than seven days after

service of the motion, unless the district court otherwise provides. Supreme Court Rule 133(b) (2020 Kan. S. Ct. R. 199). If oral argument is not request by either party, the district court may set the matter for a hearing or rule on the motion immediately. Supreme Court Rule 133(c)(2) (2020 Kan. S. Ct. R. 199).

Here, the GAL filed a motion for payment of fees on January 29, 2019. The motion notified the parties it would be heard on January 30, 2019—one day after the motion was filed—at a hearing originally scheduled for the GAL's motion for indirect contempt against Richard. The motion was not filed seven days before the hearing as required by K.S.A. 2019 Supp. 60-206(c), and none of the exceptions in K.S.A. 2019 Supp. 60-206 apply to a GAL's motion for fees. Hearing the motion one day after its filing gave Richard no time to respond. Under the facts of this case, Richard's due process rights to adequate notice under K.S.A. 2019 Supp. 60-206(c) were violated.

Because the district court considered and granted the GAL's motion without Richard having received sufficient notice, we vacate the order and remand the issue to the district court with directions for the district court rehear the motion consistent with the statute and due process.

IV.    SHOULD RICHARD BE GRANTED APPELLATE ATTORNEY FEES?

Finally, and after all briefs were filed, Richard filed a motion requesting appellate attorney fees. Richard argues attorney fees are authorized in divorce and postdivorce proceedings under K.S.A. 2019 Supp. 23-2715 "as justice and equity require." He contends attorney fees are appropriate in this case because Nicole refused to set aside the contempt finding and the district court's order that Richard pay his proportionate share of unreimbursed medical expenses, even when shown both orders were improper because of his absence from the hearing. Had Nicole followed the clear procedure set out in Kansas

15

law or conceded the issues before the appeal, Richard argues his appeal would have been unnecessary and he would not have been forced to incur his attorney fees.

Nicole responds that Richard's motion is untimely because he filed it later than 14 days after the date of the letter assigning this case to the nonargument calendar. Alternatively, Nicole argues that even if Richard's motion were timely, he still should not be awarded attorney fees because Nicole's attorney attempted to contact Richard's attorney to set aside the contempt finding because it occurred outside of Richard's presence, which Richard refused.

Richard counters that his motion was timely because he filed it 14 days after receiving the letter informing him of the October 14, 2020 summary calendar date.

*Standard of Review*

Whether a court has the authority to award attorney fees is a legal question subject to de novo review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

*Analysis*

A court generally may only award attorney fees when authorized by statute or by agreement of the parties. *Curo Enterprises v. Dunes Residential Services, Inc.*, 51 Kan. App. 2d 77, 85, 342 P.3d 948 (2015). "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Supreme Court Rule 7.07(b)(1) (2020 Kan. S. Ct. R. 50). A party seeking a motion for attorney fees on appeal must file a motion no later than 14 days after the day argument is waived or the date of the letter placing the case on the nonargument calendar, whichever is later. Supreme Court Rule 7.07(b)(2) (2020 Kan. S. Ct. R. 50).

While Richard is correct that the district court would have had the authority to award attorney fees under K.S.A. 2019 Supp. 23-2715, meaning we have the authority to award appellate attorney fees in this case, we are compelled side with Nicole's position that Richard's motion was filed too late.

Richard argues the correct date to start the 14-day clock is when he received notice of the October 14, 2020 summary calendar date on August 20, 2020. The letter assigning Case No. 121,442 to the nonargument calendar was sent on February 27, 2020. The letter assigning Case Nos. 122,223 and 122,224 to the nonargument calendar was sent on July 22, 2020. Richard did not file a motion for attorney fees until September 3, 2020. Although Richard's motion was filed exactly 14 days after the letter notifying counsel that the docket had been posted on August 20, 2020, Kansas Supreme Court rules requires the motion to be filed within 14 days of the letter notifying parties the case is on the nonargument calendar. Rule 7.07(b)(2).

Richard's argument also runs counter to our court's conclusion in *In re Marriage of Dean*, 56 Kan. App. 2d 770, 437 P.3d 46 (2018). In *Dean*, the panel denied the motion for attorney fees because the letter assigning the case to a nonargument calendar was dated March 8, 2018, and the motion for attorney fees was not filed until April 30, 2018. 56 Kan. App. 2d at 778-79.

The language of Rule 7.07(b)(2) requires the motion to be filed after the case is placed on the nonargument calendar, not after it is assigned to a docket. The letters informing the attorneys of these consolidated cases' placement on the nonargued calendar were sent on February 27, 2020, and July 22, 2020. Richard's motion for appellate attorney fees is untimely, and we will not consider it.

Finally, even if Richard's motion were timely, we would reject his request for attorney fees. As Nicole points out in her response, Nicole offered to set aside the

17

contempt finding in acknowledgement of the fact it would be reversed on appeal. Richard chose to pursue this appeal instead of accepting that offer. Also, because Richard did not prevail on his unreimbursed medical expenses claim, justice and equity do not require attorney fees be awarded in this instance.

V.     CONCLUSION

In summary, we affirm the district court's orders granting two judgments against Richard for unreimbursed medical expenses, but we vacate the district court's contempt order and its order requiring Richard pay the GAL's fees because the proper process was not followed in either instance. Those matters are remanded to the district court for rehearing. We dismiss Richard's request for attorney fees as untimely.

Affirmed in part, vacated in part, dismissed in part, and remanded with directions.